# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

### PITTSBURGH

|  |  |  |
|---|---|---|
| ROBERT SCOTT KEDDAL, | ) | |
| | ) | |
| | ) | 2:23-CV-01566-MJH |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AIR AMBULANCE WORLDWIDE, AERO | ) | |
| NATIONAL, | ) | |
| | ) | |

Defendants,

## **MEMORANDUM OPINION**

On August 31, 2023, Plaintiff, Robert Keddal, sued Defendants Air Ambulance

Worldwide and Aero National. (ECF No. 1). On September 20, 2023, Plaintiff filed an Amended

Complaint. (ECF No. 8). On December 19, 2023, Plaintiff filed a six-count Second Amended

Complaint, alleging claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §

12112 and the Pennsylvania Human Relations Act, 43 P.S. § 955. (ECF No. 19). On December

28, 2023, Defendants filed their Amended Answer. (ECF No. 20). On December 16, 2024,

Defendants filed a Motion for Summary Judgment as to all claims within the Second Amended

Complaint, a Concise Statement of Material Facts, and an accompanying brief. (ECF Nos. 43-

46). On January 27, 2025, Plaintiff filed a Brief in Opposition to Defendants' Motion for

Summary Judgment and a Counter Concise Statement of Material Facts. (ECF Nos. 47-49). On

February 12, 2025, Defendants filed their Reply. (ECF No. 51). On August 13, 2025, this Court

filed a Memorandum Opinion and Order granting Defendants' Motion for Summary Judgment as

to Plaintiff's ADA and PHRA discrimination and failure to accommodate claims. (ECF Nos. 57

& 58). Ruling was deferred as to Plaintiff's retaliation claims under the ADA and PHRA and the

parties were ordered to file supplemental briefings regarding the surviving claims. (*Id.*). On September 16, 2025, Defendants filed their Supplemental Brief regarding plaintiff's retaliation claims. (ECF No. 61). On October 8, 2025, Plaintiff filed their Brief in Opposition. (ECF No. 66). On October 22, 2025, Defendants filed their reply. (ECF No. 70). The issues are fully briefed and ripe for disposition. For the reasons below, Defendants' Motion for Summary Judgment will be granted.

## I.      Statement of Facts

Plaintiff, Robert Keddal, obtained his pilot's license in 1980. (ECF No. 52, at 5). In 2009, Mr. Keddal was diagnosed with Waldenstrom's macroglobulinemia, a type of blood cancer. (*Id.* at 6). Given the diagnosis, the Federal Aviation Administration ("FAA") revoked Mr. Keddal's medical certificate and suspended his pilot's license from 2009 until 2018, when his medical condition stabilized. (*Id.*). Once Mr. Keddal's medical condition stabilized in 2018, he began to seek employment as a pilot. (*Id.*). In 2018, Mr. Keddal was hired as a pilot by L3 Harris Technologies, Inc. (*Id.*). Mr. Keddal never flew with the company, because of his medical condition, and he resigned in October 2019. (*Id.*). In the summer of 2021, Mr. Keddal was hired as a first officer by Breeze Aviation Group, Inc. ("Breeze"). (*Id.*) As required by law, Mr. Keddal had to complete federally mandated aviation training in order to fly Breeze's aircraft. (*Id.* at 7). Mr. Keddal never completed the required training to pilot a Breeze aircraft, and he resigned from Breeze in December 2021. (*Id.*).

In 2022, Mr. Keddal applied for a Pilot-In-Command position at Aero National. (*Id.* at 7). When he applied, Mr. Keddal was aware of the legal requirement that pilots must pass federally mandated aviation training to fly a company's plane. (*Id.* at 8). Mr. Keddal was also aware of the company's policy that all pilots must have a COVID-19 vaccination. (*Id.*). In February 2022, Mr.

Keddal interviewed with Nigel Richardson, the Northern General Manager of Aero National's base at the Washington County Airport. (*Id.*). Mr. Richardson hired Mr. Keddal and sent him an offer letter on February 24, 2022, which stated, "This job offer is contingent on the following: Meeting the COVID vaccination mandate, acceptance of this agreement, and successfully passing all pre-employment and background screenings." (*Id.*). Mr. Keddal accepted the job offer and emailed Mr. Richardson stating, "In regard to our conversation yesterday about getting a vaccine. I have been in touch with my Dr. and he will work with me and or if necessary one of your own medical team to help get this done as soon as possible." (*Id.* at 9). The next day, Mr. Keddal asked about a possible alternative to getting the COVID vaccination, such a "monoclonal antibody treatment." (*Id.*). Mr. Richardson conferred with the company's medical director, who said the antibody treatment was not sufficient, and Mr. Richardson advised Mr. Keddal of the same by a February 27, 2022 email. (*Id.*).

As regards the mandatory aviation training, Aero National utilized SimCom Aviation Training, a third-party vendor located in Orlando, Florida, to conduct the mandatory aviation training to fly the company's planes. (*Id.* at 11). Mr. Keddal's first aviation training at SimCom began on March 1, 2022. Mr. Keddal completed five days of classroom coursework and flight simulator training before proceeding to the "check ride" portion of the training, which consisted of an oral examination and flight simulation examination. (*Id.*). Mr. Keddal failed the "check ride." (*Id.* at 12). In response, Aero National sent Mr. Keddal back to SimCom for training on April 1, 2022. (*Id.* at 12). This time, Mr. Keddal underwent 31 hours of additional classroom work, plus two more days of training in a flight simulator. (*Id.*). SimCom trainers determined that Mr. Keddal was unfit to proceed to the "check flight" portion of the training. (*Id.*). Mr. Keddal returned home. Thereafter, Aero National sent Mr. Keddal to SimCom for a third time on

3

or about April 21, 2022. (*Id.* at 13). Mr. Keddal was again unable to answer enough test questions to proceed to the "check ride" portion of the training. (*Id.*). Mr. Keddal returned to Pittsburgh without completing the mandatory training. After returning to Pittsburgh, on April 28, 2022, Mr. Keddal was granted medical leave, which lasted several months, until August 31, 2022. (*Id.* at 15); (ECF No. 45-31); (ECF No. 45-34).

On August 31, 2022, Mr. Keddal emailed Mr. Richardson, asking if he could be excused from getting the COVID vaccination because of his medical condition. (ECF No. 45-15, at 5). In his August 31, 2022 email, Mr. Keddal indicated that if an alternative was not permitted, he would get the COVID-19 vaccination in a hospital setting. (*Id.*). Mr. Richardson told Mr. Keddal that he was still required to get vaccinated. (*Id.* at 4).  On September 19, 2022, Mr. Keddal emailed Mr. Richardson and indicated that he still had concerns with the COVID vaccine policy. In said email, Mr. Keddal wrote:

> I can't help but feel that you don[']t quite believe my situation and for some reason have taken a stance against me no based on medical science in regards to my unique and unenviable situation but on personal opinion. I respect that everyone has opinions and perhaps biases. However I asked that we all step back and take a look at the mission and objectives and treat this situation through a reasonable and mutually respectful prism.

(ECF No. 45-15, at 3).

On September 26, 2022, Mr. Richardson called Mr. Keddal and terminated his employment with Aero National. (ECF No. 52, at 16). On September 27, 2022, Mr. Keddal emailed Mr. Richardson reiterating, that that he was told he was "being terminated for not being medically able to receive the [COVID-19] vaccine." (ECF No. 35-15, at 1-2).

## II.    Relevant Legal Standards

4

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion.  Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the

evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

## III.    Discussion

## A.  Waiver of Claims

Mr. Keddal argues that Defendants waived their right to challenge Mr. Keddal's retaliation claims, because they failed to present arguments challenging such claims in their initial briefs. (ECF No. 66, at 2). Mr. Keddal points to this Court's Memorandum Opinion which stated, "Defendants have not sufficiently briefed the elements of [Mr. Keddal's] ADA and PHRA retaliation claims," in support of waiver. (*Id.*) (citing ECF No. 58, at 7)). Defendants argue that they did not waive their right to challenge any of Mr. Keddal's claims, as their Motion for Summary Judgment stated that, "Keddal can not make out a *prima facie* claim" and sought "judgment in their favor against Keddal on all claims." (ECF No. 70, at 1).

First, it is clear Defendants intended to challenge all of Mr. Keddal's claims within their initial brief. Defendants provide a broad argument that Mr. Keddal was unqualified under the ADA and not entitled to any relief. (ECF No. 46, at 14-19). In order to assure full analysis of this issue, the Court asked for expanded briefing. Following expanded briefing from both parties, the Court will now decide Mr. Keddal's retaliation claims on the merits.

Second, the Court's prior Memorandum Opinion was commenting on the lack of specific arguments regarding Mr. Keddal's retaliation claims, Defendants indicated that they were in fact challenging Mr. Keddal's retaliation claims. Thus, the Court will decide Mr. Keddal's retaliation claims on the merits.

## B.  Mr. Keddal's Retaliation Claims

Mr. Keddal brings retaliation claims under the ADA and PHRA against Defendants. Defendants argue that Mr. Keddal fails to establish any of the elements of a prima facie case for retaliation. (ECF No. 61, at 5). Defendants further argue that they have established a legitimate non-discriminatory reason for firing Mr. Keddal, and that Mr. Keddal fails to show that their proposed reason was pretextual. (*Id.* at 17-19). Mr. Keddal argues that he has successfully established facts to show that a genuine issue of material fact exists for him to establish a prima facie retaliation claim. (ECF No. 66, at 4). Mr. Keddal further argues that he has pointed to sufficient record evidence to show that Defendants' legitimate non-discriminatory reason for Mr. Keddal's termination was pretextual. (*Id.* at 11).

The ADA prohibits retaliation against someone who "has opposed any act or practice made unlawful by [the ADA]" or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 12203(a).[1] The elements necessary to prove a prima facie case for an ADA retaliation claim are: (1) the plaintiff engaged in protected conduct; (2) the plaintiff suffered an adverse employment action by the defendant; and (3) there is a causal relationship between them. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004). "Retaliation claims are distinct from discrimination claims in that they do not require a plaintiff to prove that he or she has an actual disability; rather, a plaintiff need only show that he or she requested an accommodation in good faith." *Barber v. Subway*, 131 F. Supp. 3d 321, 329 (M.D. Pa 2015) (citing *Shellenberger v. Summit Bancorp*, 318 F.3d 183,187 (3d Cir. 2003)). If a plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason for its adverse employment

---

[1] Retaliation claims under the ADA and PHRA are addressed under the same legal standards and the Court will apply the law as relates to the ADA for all of the retaliation claims in this case. *See Rubano v. Farrell Area School Dist.*, 991 F. Supp. 2d 678, 704 (W.D. Pa. 2014).

action." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500-501 (3d Cir. 1997). This burden is

relatively light and is satisfied if an employer can "articulate any legitimate reason" for an

adverse employment action. *Id.* The burden then shifts back to the plaintiff to show that the

defendant's proffered explanation was false, and that retaliation was the real reason for the

adverse employment action. *Id.*

### i.    Protected Activity

The Court must first address whether Mr. Keddal's September 19, 2022 email constitutes a

protected activity under the ADA. Mr. Keddal argues that he engaged in a protected activity

when he requested an exemption to Defendants' COVID-19 vaccination policy for his medical

condition and by opposing his Defendants' denial of the request. (ECF No. 66, at 1).

Specifically, Mr. Keddal points to his September 19, 2022 email to Mr. Richardson wherein he

wrote "I still need to address the companies Covid19 vaccine request" and indicated that his

doctors advised against him receiving the COVID vaccination. (ECF No. 45-15, at 1). In the

same email, Mr. Keddal wrote:

> I can't help but feel that you don[']t quite believe my situation and for some reason have taken a stance against me no based on medical science in regards to my unique and unenviable situation but on personal opinion. I respect that everyone has opinions and perhaps biases. However I asked that we all step back and take a look at the mission and objectives and treat this situation through a reasonable and mutually respectful prism.

(*Id.* at 2). Mr. Keddal argues that in this instance he was "challenging Mr. Richardson's

denial of his accommodation." (ECF No. 66, at 4). By accommodation, Mr. Keddal is

seemingly referring to his August 31, 2022 email to Mr. Richardson in which he wrote

"due to my medical situation, [I]s there any possibility to continue employment without

8

being vaccinated." (ECF No. 45-15, at 4). However, in the same August 31, 2022 email,

Mr. Keddal wrote:

> If for any reason there is no way of me being employed without a Covid19 Vaccine, my doctor has offered to arrange an in hospital stay which they will premedicate me to help mitigate the anaphylaxis reactions and monitor me for a day or three depending on the situation.

(*Id.*).

Defendants argue that Mr. Keddal does not make any "clear or definitive request

for excusal from the company's vaccine mandate" in a way that constitutes a protected

activity under the ADA. (ECF No. 61, at 7-8). Defendants further argue that Mr. Keddal

"regularly raised the specter of potentially avoiding the vaccine, if possible, even then he

nonetheless repeatedly stated his willingness to undergo the vaccine if necessary." (*Id.* at

8).

A protected activity under the ADA "includes retaliation against an employee for

requesting an accommodation." *Sulima v. Tobyhanna Army Depot*, 602 F. 3d 177, 188-89

(3d Cir. 2010). Whether Mr. Keddal was qualified under the ADA is irrelevant to his

retaliation claims. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997)

("Unlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA retaliation case

need not establish that he is a 'qualified individual with a disability.'").

Within Mr. Keddal's August 31, 2022 email to Mr. Richardson, he clearly asked

to be exempt from Defendants' vaccination policy, even though he also communicated

his willingness to receive the vaccination in a hospital setting if need be. (ECF No. 45-15,

at 5). Also on August 31, 2022, Mr. Richardson emailed Mr. Keddal and denied his

request for a vaccine mandate exception. On September 19, 2022, Mr. Keddal responded

to Mr. Richardson, indicating that that receiving the COVID vaccine was still an issue for

Mr. Keddal, and he indicated that he felt Mr. Richardson's denial of his vaccine exemption accommodation may have been based upon Mr. Richardson's opinion or bias.

The Court finds Mr. Keddal's August 31, 2022 vaccine exception request puzzling, especially considering his affirmation of his willingness to receive the vaccine in the same email. Furthermore, Mr. Keddal's September 19, 2022 email to Mr. Richardson is vague, but his August 31, 2022 email provides context to the question of whether Mr. Keddal was making any sort of opposition statement or request for accommodation. Nevertheless, weighing the evidence in favor of the non-moving party, as the Court must at this stage, Mr. Keddal has pointed to evidence that could establish a jury question as to whether or not his August 31, 2022 email was a request for an exception to the vaccine requirement, which was subsequently denied. Reading the September 19, 2022 email, in context with the former email, Mr. Keddal has shown that there is a genuine issue of material fact that he made an opposition statement within his September 19, 2022 email. Thus, as to this element of Mr. Keddal's retaliation claim, Defendants' Motion for Summary Judgment will be denied.

### ii.    Adverse Action

Next, the Court must determine whether Mr. Keddal suffered from an adverse action. Defendants argue that Mr. Keddal cannot point to facts to establish a genuine issue of material fact that he suffered an adverse employment action. (ECF No. 61, at 15 -16). Defendants further argue that Mr. Keddal does not establish that he suffered an adverse action, because he was not qualified under the ADA; and thus, termination does not constitute an adverse action. (*Id.*). Plaintiff argues that he has established that he suffered an adverse employment action, citing *Krouse* as support, in which the Third Circuit held

that total disability does not prevent a plaintiff from pursuing a retaliation claim. (ECF No. 66, at 10).[2]

Under the ADA, any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" is an adverse action. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006). When it comes to retaliation under the ADA, as mentioned above, it does not matter whether Mr. Keddal was qualified in order to bring an ADA claim for retaliation. Here, Mr. Keddal was terminated. Termination is an action that would dissuade a reasonable worker from making or supporting a charge of discrimination. As such, Mr. Keddal has produced sufficient evidence to establish a jury question as to whether or not he suffered from an adverse action.

### iii.    Causal Connection

Finally, the Court must determine whether Mr. Keddal can point to facts to show that a genuine issue of material facts exists that a causal connection existed between Mr. Keddal's September 19, 2022 email and his termination. Defendants argue that Mr. Keddal fails to point to any evidence to establish a genuine issue of material fact that Mr. Keddal's September 19, 2022 email was causally connected to his assertion that he was terminated in retaliation for his request about the vaccine. (ECF No. 61, at 16-20). Mr. Keddal argues that the close temporal proximity between his September 19, 2022 email and his termination is enough to establish the requisite causal connection. (ECF No. 66, at 11).

---

[2] The Court notes that in Mr. Keddal's Second Amended Complaint, he never alleged that his termination was an adverse action for the purposes of his retaliation claim. Instead, Mr. Keddal pled that Defendants "decision to not honor Plaintiff's medical restrictions was induced by their intent to retaliate against Plaintiff for his protected activity." (ECF No. 66, 8).

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) an intervening pattern of antagonism [or other evidence of retaliatory animus] coupled with timing to establish a causal link." *Parrotta v. PECO Energy Company*, 363 F. Supp. 3d 577, 601 (E.D. Pa. 2019).

The pertinent issue, when it comes to causation, is whether or not Mr. Keddal can show that he was terminated *because of his* statements made in his September 19, 2022 email. Upon review of the record, the only evidence connecting Mr. Keddal's September 19, 2022 email to his termination on September 26, 2022 is the temporal proximity between the two. Mr. Keddal points to no other evidence on the record to show that he was terminated because of his September 19, 2022 email. Mr. Keddal argues that the Third Circuit has found that a seven-day period alone is unduly suggestive of retaliation, citing to *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.,* 691 F.3d 294, 307 (3d Cir. 2012). The Court acknowledges that such a timeframe has been found to be unduly suggestive; however, such findings in a separate case, with different factual circumstances, does not necessarily mandate that this Court find that the same timeframe, without more, is unduly suggestive of retaliation in the present case.

In this case, it is undisputed that Mr. Keddal accepted his employment at Aero National with the express condition that he receive the COVID-19 vaccination. Specifically, the employment agreement stated, "This job offer is contingent upon the following: Meeting the COVID vaccination requirement." (ECF No. 52, at 8). On February 24, 2022, the same day he accepted the job offer, Mr. Keddal emailed Mr. Richardson and confirmed his commitment to work with his doctor to get the COVID-19

12

vaccination as soon as possible. (*Id.* at 9). Then, on February 25, 2025, the day after Mr. Keddal accepted the terms and conditions for employment, he emailed Mr. Richardson asking about alternatives to getting the COVID-19 vaccination. (*Id.*). On February 27, 2022, Mr. Richardson emailed Mr. Keddal informing him that an alternative to vaccination would not be permitted. (*Id.*). On the same day, Mr. Keddal emailed Mr. Richardson again affirming his commitment to getting the COVID-19 vaccination. (*Id.* at 10). Defendants then sent Mr. Keddal to the SimCom flight trainings on three separate occasions, the first beginning on March 1, 2022, the second on April 1, 2022, and the third on April 21, 2022. (*Id.* at 11, 12, & 13). Mr. Keddal did not pass the flight trainings on any of these attempts. On April 28, 2022, Mr. Keddal went on medical leave. (ECF No. 45-31). Mr. Richardson's April 28, 2022 correspondence letter to Mr. Keddal detailed that Mr. Keddal was removed from the payroll on April 28, 2022 and directed Mr. Keddal to "get healthy after which [Mr. Keddal] will contact us to be re-evaluated for employment." (*Id.*).

On June 15, 2022, Mr. Richardson wrote Mr. Keddal, continuing Mr. Keddal's medical leave until August 31, 2022. (ECF No. 45-34). On August 31, 2022, Mr. Keddal emailed Mr. Richarson, asking again if there was any alternative to him receiving the vaccine given his health. (ECF No. 45-15). In that same email, Mr. Keddal indicated that if an alternative was not possible that he would get the vaccine in a hospital setting. (*Id.*). On the same day, Mr. Richardson refused Mr. Keddal's request, writing "we are still requiring pilots to be vaccinated because our pilots can fly to other countries." (*Id.*). On September 19, 2022, Mr. Keddal emailed Mr. Keddal back indicating that the vaccine mandate was still an issue given his health. (*Id.*). Mr. Keddal was terminated on

13

September 26, 2022. Mr. Keddal's September 27, 2022 email indicated that the reason Mr. Richardson provided to Mr. Keddal for his termination was because he could not get the COVID-19 vaccination. (ECF No. 35-15, at 1-2).

The Court again summarizes this factual timeline to emphasize that, upon consideration of the entire record, the seven-day temporal proximity between Mr. Keddal's September 19, 2022 email and his September 26, 2022 termination is not alone sufficient to raise any question of material fact as to whether such termination is unduly suggestive of retaliation. The record is clear that Mr. Keddal was terminated for not receiving the COVID-19 vaccination. From the outset of Mr. Keddal's employment, he was aware that he must submit to Defendants' vaccine mandate, it was expressly included in his employment offer. Further, on both occasions, i.e. his February 25, 2022 and August 31, 2022 emails, when Mr. Keddal asked for an alternative to receiving the COVID-19 vaccine, he also indicated that he *would* get the vaccine if an alternative was not permitted. Relying on Mr. Keddal's affirmation that he would receive the COVID-19 vaccine, Defendants' sent Mr. Keddal to the SimCom training on three separate occasions, allowed him to go on medical leave for over four months, and planned to possibly send him to a fourth SimCom training for him to attempt to pass his flight certification testing.

Mr. Keddal's supplemental brief in opposition continuously argues that Mr. Keddal was fired for not getting the COVID-19 vaccination; however, the focus for his retaliation claim is his request for accommodation, which was relayed in his September 19, 2022 email. *See* (ECF No. 66, at 8, 11-17). Mr. Keddal's claim of discrimination under the ADA failure to accommodate claim for not obtaining his vaccination has

already been decided in favor of the defense in this Court's August 13, 2025 Opinion and Order. (ECF Nos. 56-58). The claim presently under consideration is Mr. Keddal's ADA retaliation claim. For a retaliation claim, Mr. Keddal must establish a causal connection between his alleged protected activity, which was his September 19, 2022 email request to Mr. Richardson that he not be required to get vaccinated, and his termination. A retaliation claim is not a repackaging of a failure to accommodate claim. As pointed out by Mr. Keddal, Mr. Richardson testified that the only reason provided to Mr. Keddal for his termination was that he did not get the COVID-19 vaccination. Mr. Richardson's testimony was as follows:

> Q: During this termination conversation, to the best of your recollection, the only reason you gave [Mr. Keddal] for terminating him was his inability to receive the COVID vaccine?
>
> A: Yeah.

(ECF No. 45-2, at 50). Additionally, on September 27, 2022, the day after he was terminated, Mr. Keddal emailed Mr. Richardson and stated, "to follow up on our call from yesterday during which you informed me I am being terminated for not being medically able to receive the Covid19 vaccine." (ECF No. 45-35, at 1). This evidence does not support that Mr. Keddal was terminated in retaliation for his September 19, 2022 email; instead, it supports that he was terminated for his medical inability to get the COVID-19 vaccination. That the Defendants were not motivated to retaliate from the request is underscored by the fact that, when Mr. Keddal first asked for an alternative to the vaccine mandate in his February 27, 2022 email, Defendants did not terminate him. In fact, they sent him to flight training on three separate occasions and approved a four-month medical leave to afford him opportunity to retain his employment. Given the record, temporal proximity alone does not establish a sufficient causal connection

15

between Mr. Keddal's September 29, 2022 email and his September 26, 2022 termination to support any question of material fact that Mr. Keddal was terminated in retaliation for his request for waiver of the vaccine employment condition.

Thus, Mr. Keddal fails to establish that a genuine issue of material fact exists that a there was a causal connection between his September 19, 2022, email and his termination on September 26, 2022. As such, Mr. Keddal's ADA and PHRA claims for retaliation, at Counts II and V of the Second Amended Complaint, fail.

### iv. Legitimate Non-Discriminatory Reason and Pretext

Even if Mr. Keddal was able to establish the requisite causal connection, which he does not, he also does not show that Defendants' asserted legitimate nondiscriminatory reasons for terminating Mr. Keddal were pretextual.

A defendant's burden to articulate a legitimate, non-discriminatory reason is "relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." *Shellenberger*, 318 F.3d at 189 (quoting *Krouse*, 126 F.3d at 500) (alterations in original). Throughout the pendency of this litigation, Defendants have offered several reasons for Mr. Keddal's termination. In their supplemental brief, Defendants point to Mr. Richardson's testimony, and contend that Mr. Keddal was terminated because he was "a serially problematic employee who repeatedly failed aviation training and otherwise demonstrated an unreadiness, unwillingness, lack of commitment, and inability to regularly report to work." (ECF No. 61, at 18-19). Defendants point to Mr. Richardson's testimony in support of this

16

contention. Defendants argue that this constitutes a legitimate nondiscriminatory reason for terminating Mr. Keddal, and Mr. Keddal fails to point to any record evidence to refute Defendants' reasoning as pretextual. (*Id.*). This is a sufficient legitimate nondiscriminatory reason.

As the Defendants have proffered legitimate nondiscriminatory reasons, the burden then shifts to Mr. Keddal to show that the proffered reasons were pretextual. Mr. Keddal argues that the temporal proximity between his September 19, 2022 email and his termination, aggregated with Defendants' shifting justifications for Mr. Keddal's termination, constitutes pretext. (ECF No. 66, at 11).

To demonstrate pretext, Mr. Keddal must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 283 (3d Cir. 2001) (citation omitted). This involves demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendants' justifications to render them "unworthy of credence." *Id.*

For the reasons discussed above related to causation, Mr. Keddal cannot point to any record evidence, other than temporal proximity, to establish a genuine issue of fact that Defendants' legitimate nondiscriminatory reasons were pretextual. To combat Defendants' proffered legitimate nondiscriminatory reasons, Mr. Keddal contends the true reason he was terminated was because he would not get the COVID-19 vaccination. If true, such a reason does nothing to disprove Defendants' legitimate nondiscriminatory

17

reasons for termination, it just shows that Mr. Keddal may have been terminated for another reason, failing to abide by an express condition of his employment. A condition that Mr. Keddal repeatedly reiterated he would abide by. Further, from his original offer of employment to the date of termination, Mr. Keddal was not able to successfully pass his certification test to become legally qualified to perform the position for which he was hired. He was thus not qualified under the ADA. The record does not establish any question of material fact as to the Plaintiff's burden to show that Defendants' legitimate nondiscriminatory reasons were pretextual.

## IV.    Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment, as to Mr. Keddal's retaliation claims under the ADA and PHRA, at Counts II and V of the Second Amended Complaint, will be granted. A separate order to follow.


DATED: March 11, 2026                                    BY THE COURT:

                                                         Marilyn J. Horan
                                                         United States District Judge

18